IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL ACTION FILE NO. |
| v. | |
| VICTOR MUNOZ (5), | 1:18-CR-234-TWT-JKL-5 |
| Defendant. | |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Defendant Victor Munoz is charged in this case with one count of conspiracy to possess with intent to distribute cocaine and methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One) and one count of possession with intent to distribute methamphetamine and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 841(b)(1)(A)(ii) (Count Four).   [Doc. 21 (Superseding Indictment) at 1-2, 4-5.]

This case is before the Court on the following pretrial motions:

- Munoz's Motion for Governmental Disclosure of All Cooperating Sources, Along with Any Deals, Promises, or Inducements Involving Each Cooperating Source and Potential Witness [Doc. 109 ("Motion for Disclosure")];

- Munoz's Motion to Dismiss for Speedy Trial Violation and Alternatively to Dismiss on Double Jeopardy Grounds [Doc. 114 ("Motion to Dismiss")];

- Munoz's Preliminary Motion to Suppress Wiretap Evidence [Doc. 117]; and

- Munoz's Amended Motion to Suppress Wiretap Evidence Requesting Production of Predecessor Applications and Line Sheets and Reserving the Right to Further Amend [Doc. 124 (together with the prior motion, "Motions to Suppress")].

For the reasons that follow, it is **ORDERED** that Munoz's Motion for Disclosure [Doc. 109] be **DENIED**; and it further **RECOMMENDED** that his remaining motions also be **DENIED** [Docs. 114, 117, 124.]

## I.    MOTION FOR DISCLOSURE

In Munoz's Motion for Disclosure, he seeks early disclosure of *Giglio*[1] material as well as disclosure of cooperating sources.  [Doc. 109.]  At the pretrial conference, the Court denied, in part, Munoz's motion to the extent that he requested disclosure of cooperating sources, based on the government's

---

[1] *Giglio v. United States*, 405 U.S. 150 (1972).

representation that there are no confidential informants relevant to him.  [*See* Doc. 119.]  The Court directed the government to respond to the motion, however, to the extent that Munoz sought the early disclosure of *Giglio* material.  [*Id.*]  That issue is now ripe for consideration.

In Munoz's motion, he argues that the Court should order the production of *Giglio* material 60 days before trial.  [Doc. 109 at 5-8.]  He contends that he needs the information no later than 60 days before trial "to ensure [his] rights to due process, equal protection, a fair trial, and a reliable sentencing."  [*Id.* at 8.]  The government responds that there is no right to early *Giglio* disclosure, and notes[2] that this Court's scheduling order requires only that *Giglio* material be produced sufficiently in advance of trial to allow the defense to use it effectively.  [Doc. 126 at 2.]  The government further points out that Munoz provides no basis for the early disclosure and that, at this time, the government "expects to produce little to no *Giglio* material."  [*Id.* at 2-3.]

In reply, Munoz points out that the government did not affirmatively propose a specific reasonable time for disclosure or show how it could be prejudiced by the requested early disclosure.  [Doc. 134 at 2.]  He reiterates that the government's

---

[2] As Munoz also acknowledges.  [*See* Doc. 109 at 6 n.2.]

case is circumstantial and "hinge[s] heavily on witness credibility," making it "imperative that [he] be prepared to impeach those witnesses whom the Government will ultimately call." [*Id.* at 3-5.] He contends that the information—including but not limited to "criminal history logs and any impeaching information, or evidence of any deals or understandings as to those witnesses" should be produced no later than 45 days before trial. [*Id.* at 5-6.] He finally asks the Court to compel the government to "make[] its disclosures in the form of a written pleading certifying that there is no additional *Giglio* information that should be submitted, under the parameters of the law." [*Id.* at 6.]

"*Giglio* requires the prosecution to turn over to the defense evidence in its possession or control which could impeach the credibility of an important prosecution witness." *United States v. Jordan*, 316 F.3d 1215, 1226 n.16 (11th Cir. 2003). This Court's pretrial scheduling order directs the government to produce provide all materials and information in compliance with its obligations under *Giglio* and to provide impeachment material "not later than production of the Jencks Act statements." [Doc. 60 at 7.] The scheduling order further provides that a party can request a modification of this standard ruling by filing a particularized motion for relief. [*Id.* at 6.]

4

The Court is not persuaded that Munoz has made a sufficient showing to justify his request for disclosure of *Giglio* materials either 45 or 60 days before trial. Munoz may well be correct that witness credibility will be of paramount importance, but that is typical of many criminal proceedings, and here, Munoz does not point to any extraordinary features of this case that make early disclosure of *Giglio* materials especially necessary. The Court also notes that the Government anticipates that there will be "little to no *Giglio* material," which further weighs against Munoz's contention that additional time is required pretrial to review the material. Accordingly, the Court **DENIES** Munoz's request for early disclosure of *Giglio* materials.[3]

---

[3] Munoz also makes passing references to *United States v. Brady*, 373 U.S. 83 (1963) in his motion and reply brief. The government indicates in its response that it "agrees that it is obligated to provide *Brady*" [Doc. 126 at 1-2], and this Court's pretrial scheduling order directs the government to provide "[e]xculpatory material as defined in *Brady* and *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), . . . sufficiently in advance of trial to allow a defendant to use it effectively" [Doc. 60 at 7]. Similar to Munoz's arguments regarding *Giglio* materials, the Court finds that Munoz has not made a particularized showing as to why he needs such materials 45 or 60 days prior to trial; thus, the Court also declines to modify the pretrial scheduling order in relation to *Brady* material.

## II.    MOTION TO DISMISS

Munoz next moves to dismiss the charges against him due to the alleged inexcusable delay in indicting him in this case, or alternatively, on double jeopardy grounds.  [Doc. 114.]  The Court addresses each basis for dismissal separately.

### A.    Request for Dismissal due to Preindictment Delay

### 1.    The Parties' Contentions

Munoz argues that the government violated his right to due process by delaying more than three years before indicting him in this case.  [Doc. 114 at 1-4.]  In particular, he contends that "[t]he sole act attributed to [him in the superseding indictment] was his driving a vehicle that unloaded furniture in which contraband was allegedly found . . . on November 20, 2015"; that there is no evidence that he was involved with any co-defendant in this case after the November 20, 2015 delivery; and yet the government waited over three years to charge him in connection with his alleged participation in the drug conspiracy.  [*Id.* at 2.]  He maintains that he has suffered substantial prejudice because he must now "prepare a defense based on alleged facts reflecting very little involvement on his part that occurred over three years ago" and that "the lapse of time has impaired [his] ability to marshal a sufficient defense, especially considering that memories as to the parties and witnesses have considerably diminished, not to mention [his]

6

ability to access individuals who can assist in his defense." [*Id.* at 2-3.] He posits that the government's delay likely "stemmed from [its] desire to gain a tactical advantage." [*Id.* at 4.] In support, he represents that shortly before he was sentenced in April 2018 in a federal drug case pending in the Southern District of Texas, a "Texas prosecutor" told Munoz that the United States Attorney's Office for the Northern District of Georgia had requested Munoz's assistance on "a case within [the Northern District of Georgia]," thus indicating that the government was aware of the conduct alleged in this case, but had delayed indicting him "to better its position." [*Id.* at 4-5.] Notably, Munoz appears not to have provided any such information to the government, as he had none to give. Nevertheless, he contends that the government's conduct "raises the critical question as to whether the delay was due to the government's attempts to secure cooperators or buy time for additional investigation, at the expense of [his] constitutional right to be indicted within a reasonable time of the discovery and subsequent investigation of the alleged underlying facts." [*Id.* at 4.] Munoz requests a hearing so that the government may "show cause that the delay was not tactically and intentionally-based." [*Id.*]

The government responds that the superseding indictment places the alleged drug conspiracy between June 2015 and October 2018—well within statute of limitations—and, thus, the issue turns on whether he can show both that the delay resulted in actual substantial prejudice and that it was the result of deliberate action by the government to gain tactical advantage. [Doc. 127 at 3-4.] The government argues that Munoz has failed to make either showing. [*Id.* at 4-10.] Without making either showing, the government maintains, Munoz cannot show a violation of his constitutional right to due process under the Fifth Amendment of the United States Constitution. [*Id.*]

On reply, Munoz contends that he has been prejudiced by the delay because had the government "timely indicted this matter, [he] could have resolved this and [the prior federal case pending in the Southern District of Texas] at the same time." [Doc. 133 at 2-3.] But as a result of the delay, he contends that he must "defend allegations over three years old from prison" (Munoz is detained pending trial) and the government has "expand[ed] its basis of liability against him" by charging him with a conspiracy that post-dates the alleged delivery by nearly three years. [*Id.* at 3.] Citing *United States v. Ingram*, 446 F.3d 1332 (11th Cir. 2006), he urges the Court to presume prejudice under these circumstances. [*Id.* at 3-4.] Munoz then

8

argues he is unable to meet his burden to show that the government's delay in indicting the case was to obtain a tactical advantage without an evidentiary hearing; and he is therefore entitled to one, at which the government must provide evidence regarding its reasons for delay.  [*Id.* at 4-7.]

### 2.    Analysis

To establish a due process violation based on the government's delay in bringing an indictment, even where, as here, it was filed within the applicable statute of limitations,[4] the defendant must "establish both (1) that the delay actually prejudiced his defense and (2) that it resulted from a deliberate design by the government to gain a tactical advantage over him."  *United States v. Farias*, 836 F.3d 1315, 1325 (11th Cir. 2016).  "This standard is 'an exceedingly high one.'" *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) (quoting *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984)).

Munoz's assertion that he has been prejudiced is far too generalized to meet his burden of showing actual substantial prejudice.  He contends only generally that

_____

[4] The statute of limitations for a conspiracy under 21 U.S.C. § 846 and a substantive possession-with-intent-to-distribute offense under § 841 is five years. 18 U.S.C. § 3282(a); *United States v. Arnold*, 117 F.3d 1308, 1313 (11th Cir. 1997). There is no dispute that the statute of limitations does not bar Munoz's prosecution in this case.

9

witnesses may be difficult to locate or that memories will have faded with time, which is too speculative to demonstrate actual prejudice. *See United States v. Corbin*, 734 F.2d 643, 648 (11th Cir. 1984) ("Faded memories occasioned by preindictment delay do not alone satisfy the actual prejudice requirement."); *United States v. Spurlin*, No. 1:13-CR-304-TWT-JKL-4, 2018 WL 1702351, at *3 (N.D. Ga. Feb. 27, 2018) (finding that defendant's "abstract concern that memories may have faded over time does not provide a basis for finding actual prejudice" where defendant failed to "specify what evidentiary gaps might arise due to witness's inability to recall events from years past"), *report and recommendation adopted*, 2018 WL 1697445 (N.D. Ga. Apr. 6, 2018); *United States v. Sanders*, No. 3:15-CR-00010-TCB, 2015 WL 6684746, at *8 (N.D. Ga. Oct. 29, 2015) (stating that "speculative allegations, such as general allegation of loss of witnesses and failure of memories, are insufficient to demonstrate  . . . actual prejudice" (citation omitted)), *report and recommendation adopted*, *id.* at *3.  Similarly, Munoz does not identify a single witness that he has been unable to locate as a result of the chronological gap between his alleged delivery of contraband in November 2015 and the indictment returned in December 2018, much less the expected content that was lost as a result. *Cf. United States v. Holland*, 396 F. Supp. 3d 1210, 1224 (N.D.

10

Ga. 2019) (rejecting defendant's contention that he was prejudiced because "he has experienced significant trouble locating witnesses," even when those witnesses were identified, since defendant "has not established that the witnesses he cannot find or cannot interview are central to his defense"). Thus, he has not shown that he has in fact been prejudiced in his effort to locate and secure any witness and/or testimony.

Munoz's other assertions of actual prejudice are likewise without merit. His contention that if the government had indicted him sooner, he could have resolved these charges at the same time that he resolved the charges pending in the separate federal prosecution in Texas is too speculative to support a showing of actual prejudice. Munoz offers no concrete explanation for how he would have resolved both prosecutions simultaneously or how he was harmed by proceeding sequentially. Indeed, Munoz states in his brief that he maintains his "full innocence" with respect to the charges in this case [*see* Doc. 133 n.1], leaving the Court to wonder just how he actually might have resolved both cases simultaneously. Likewise, his assertion that he was surprised to have been indicted in a separate

federal case after serving his prior sentence does not make the timing prejudicial.[5] Finally, his argument that he has been prejudiced because he has been detained pending trial is not germane to the present inquiry, since the decision to detain him had nothing to do with the timing of the indictment in this case.

Munoz's alternative assertion that that the Court should presume prejudice is a nonstarter.  The Eleventh Circuit has stated explicitly that "[p]rejudice is not to be presumed because of a lengthy delay in initiating prosecution." *Butler*, 792 F.2d at 1533; *see also Stoner v. Graddick,* 751 F.2d 1535, 1544 (11th Cir. 1985) ("[T]he law in this circuit is that prejudice will not be presumed because of a lengthy delay."); *Sanders*, 2015 WL 6684746, at *7 n.15 (rejecting defendant's argument that preindictment delay was presumptively prejudicial).   Along these lines, Munoz's reliance on *Ingram* is misplaced, as that case dealt with postindictment delay—a delay that triggers the Sixth Amendment right to a speedy trial and is analyzed under an entirely different standard than a preindictment delay.  To be sure, the *Ingram* court recognized that preindictment delay may be relevant in determining whether a defendant's constitutional right to a speedy trial has been

_____

[5] Plaintiff's surprise is likewise belied by his contention that he was told at his earlier sentencing in April 2018 that prosecutors from this district sought information from him.  [*See* Doc. 114 at 4-5.]

12

violated; however, the court did so within the prism of a Sixth Amendment speedy trial analysis (and not the due process analysis presently before the Court). *Ingram*, 446 F.3d at 1339. Here, Munoz asks for dismissal based solely on preindictment delay, and, thus, the Sixth Amendment right to a speedy trial is not implicated. *See United States v. Lovasco*, 431 U.S. 783, 788 (1977) (stating that "as far as the Speedy Trial Clause of the Sixth Amendment is concerned, such [preindictment] delay is wholly irrelevant") (citing *United States v. Marion*, 404 U.S. 307 (1971)). Accordingly, this Court is bound by existing precedent, which requires Munoz to show actual prejudice—a showing that he has not made.

Since Munoz has not made a showing that he was actually prejudiced by the preindictment delay, the Court's analysis need not go further. *See Corbin*, 734 F.2d at 647-48 (declining to reach the question of whether preindictment delay was intended to gain tactical advantage where defendants failed to show actual prejudice by delay). Nonetheless, even if Munoz could prove actual prejudice, he has not made the necessary showing that the supposed delay in indicting him was the product of a deliberate strategy designed to gain a tactical advantage. *See United States v. Marshall*, 360 F. App'x 24, 26 (11th Cir. 2010) ("Even where no good, detailed reason for the delay exists, we will not provide relief due to a pre-

indictment delay unless there is evidence of bad faith or intent to gain a tactical advantage.") (citing *Stoner*, 751 F.2d at 1543).

Munoz's speculation that the government may have delayed in order to "buy time for additional investigation" or secure cooperators to better its chances at trial is inadequate in making the requirement demonstration. Even if Munoz is correct that the government had enough evidence to charge him but nevertheless delayed indicting him because it wished to continue investigating the case, such a decision does not reflect a bad faith or deliberate choice to gain a tactical advantage at trial. The Supreme Court has recognized that "investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused,' precisely because investigative delay is not so one-sided." *Lovasco*, 431 U.S. at 795 (1977) (quoting *Marion*, 404 U.S. at 324). Along these lines, "[t]he Supreme Court has vested prosecutors with substantial discretion as to the timing of charges" and has "squarely rejected a due process requirement that a prosecutor file charges as soon as he has assembled sufficient evidence to prove guilt beyond a reasonable doubt." *United States v. Holland*, No. 1:17-CR-00234-AT-CMS, 2018 WL 8838858, at *9 (N.D. Ga. July 27, 2018) (citing *Lovasco*, 431 U.S. at 792, 795), *report and recommendation adopted*, 396 F. Supp. 3d 1210; *see also*

14

*United States v. Thomas*, 62 F.3d 1332, 1339 (11th Cir. 1995) ("A prosecutor has no obligation to bring charges as soon as she has enough evidence to indict; instead, she may wait until she is satisfied that she has enough evidence to establish guilt beyond a reasonable doubt."). Accordingly, Munoz has not met his burden to show that government deliberately delayed in indicting him to engineer a tactical advantage in this case.

Finally, as to Munoz's request for an evidentiary hearing, no evidentiary hearing is warranted due to the absence of a prima facie showing that Munoz was actually prejudiced by the delay in charging him in this case or that the government purposefully delayed indicting him to gain a tactical advantage. *See Farias*, 836 F.3d at 1325 (defendant not entitled to evidentiary hearing on claim of preindictment delay where "he failed to set forth any specific allegations in support of it"); *Holland*, 2018 WL 8838858, at *10 (denying request for evidentiary hearing where defendants did not identify or describe any relevant or material evidence that they would offer during such a hearing that would establish a violation of due process based on preindictment delay).

For all of these reasons, Munoz's motion to dismiss should be denied to the extent that it seeks dismissal of the superseding indictment for preindictment delay.

**B.      Request to Dismiss on Double Jeopardy Grounds**

**1.      The Parties' Contentions**

Munoz alternatively argues that the charges in this case should be dismissed on double jeopardy grounds.  [Doc. 114 at 5.]  He points out that in November 2017, some two years after the delivery of the contraband charged in this case, he was indicted in the Southern District of Texas on one count of conspiracy to possess with intent to distribute more than 50 kilograms of marijuana, in violation of 21 U.C.S. §§ 841(a)(1), 841(b)(1)(C), and 846(a); and one count of possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.C.S. §§ 841(a)(1) and 841(b)(1)(D).  [*Id.* at 5; *see also* Doc. 127-1 (indictment).]  He pleaded guilty to the conspiracy charge, the substantive possession charge was dismissed, and he was sentenced to 18 months in custody.  [Doc. 114 at 5.]  Munoz contends that double jeopardy bars his prosecution in the present case because the drug conspiracy charge here completely subsumes the drug conspiracy charged in Texas for which Munoz was sentenced.  [*Id.*]

The government responds that Munoz has failed to show that the conspiracies charged in the Texas case and here are, as a matter law and fact, the same offense.  [Doc. 127 at 11-18.]  The government further argues that Munoz is

16

not entitled to an evidentiary hearing on the issue because he has not established a nonfrivolous prima facie case of double jeopardy.  [*Id.* at 14.]

On reply, Munoz contends that he has established a prima facie case that the two conspiracies are the same offense because both indictments allege he transported drugs, the alleged conspiracies both involved the importation of illicit drugs from Mexico to the United States, and the dates of the conspiracies overlap. [Doc. 133 at 10-11.]  He further argues that the prosecutors in the Northern District of Georgia must have been "intimately involved in [his] Texas case" because they tried to speak with him before his sentencing in April 2018.  [*Id.* at 12.]

### 2.    Analysis

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offen[s]e to be twice put in jeopardy of life or limb."  U.S. Const. amend V.  Effectively, "the Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense."  *United States v. Votrobek*, 847 F.3d 1335, 1339 (11th Cir. 2017) (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977)).  "In pretrial double jeopardy proceedings, defendants have the burden of establishing a prima facie nonfrivolous double jeopardy claim; if they make the necessary showing, the burden of

17

persuasion shifts to the government to show by a preponderance of the evidence that the indictments actually charge separate crimes." *United States v. Nino*, 967 F.2d 1508, 1510 (11th Cir. 1992).  A defendant can make a prima facie showing "through the use of indictments, record materials, testimony, and other evidence normally available to him"; however, an evidentiary hearing "is not required unless the defendant has proffered evidence showing a nonfrivolous double jeopardy claim." *United States v. Garcia*, 721 F.2d 721, 723 & 723 n.2 (11th Cir. 1983). "Like a pretrial suppression hearing, the double jeopardy hearing allows the defendant to testify and disclose matters without fear that the evidence will be used against him at the ensuing trial." *Id.* at 723.  As a preliminary matter, then, the Court must determine if Munoz has made this required showing.

To determine whether the conspiracies charged in successive prosecutions are in fact one, the Court considers five factors:

> (1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place.

*United States v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978)[6]; *see also United States v. Nyhuis*, 8 F.3d 731, 738 (11th Cir. 1993) (reaffirming *Marable* and holding, after considering the *Marable* factors, that defendant failed to meet his burden to make out a prima facie double jeopardy claim).

The first *Marable* factor—time—favors Munoz, but it is not dispositive. The Texas indictment alleged that the drug conspiracy lasted from on or about February 3, 2017 through on or about October 17, 2017. [Doc. 127-1 at 2.] In this case, the conspiracy allegedly ran from at least June 1, 2015 through on or about October 25, 2018. [Doc. 21 at 1.] Thus, the time period for the conspiracy alleged in the Texas indictment is wholly subsumed within the period the government contends the conspiracy charged in this case was ongoing. But even though there is temporal overlap between the two conspiracies, it does not follow that the charged offenses necessarily involved the same conspiracy.[7] *See Nyhuis*, 8 F.3d at 736.

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[7] Notably, the government represents in its Notice of Intention to Introduce 404(b) Evidence and Motion in Limine for Admission of 404(b) Evidence ("Notice to Introduce Evidence") that the conduct for which Munoz was arrested in the Texas conspiracy and which form the basis of the two charges in the Texas case all occurred after the conduct for which he is indicted in this case. [Doc. 112 at 4.]

The second *Marable* factor—the extent to which there is an overlap of co-conspirators—weighs heavily against Munoz.  Munoz has not shown any common actor—other than himself—who participated in the two alleged conspiracies.  He proffers no information, much less evidence, to suggest that any of the co-conspirators charged in this case were also co-conspirators in the Texas case.  Nor does he does explain why he has not provided such information—a telling omission since he pleaded guilty to the conspiracy charge in Texas.[8]  The parties cite to no case—and the Court has not found any—where a defendant has successfully met his burden of showing a prima facie claim of double jeopardy and yet failed to provide any support for the contention that there were co-conspirators common to both conspiracies.  *See Nyhuis*, 8 F.3d at 737 (concluding that defendant failed to make out a prima facie claim of doubly jeopardy where "the casts of characters in the two [charged] conspiracies [were] almost entirely different); *see also United States v. Futch*, 637 F.2d 386, 390 (5th Cir. 1981) (where two drug conspiracies shared only three co-conspirators in common, but each included eight others, the "operations were predominantly different").  Since "the gist of the crime of

---

[8] The publicly-available records available on PACER from the Texas case do not disclose any information about the co-conspirators.

20

conspiracy . . . is the agreement . . . to commit one of more unlawful acts," *Nino*, 967 F.2d at 1511 (citation omitted), Munoz's failure to identify even a single other common co-conspirator is significant.

The third factor—the statutory offenses charged—weighs in favor of Munoz's prima facie showing.  Both the Texas indictment and the operative indictment in this case charge Munoz with participating in a conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846 and a substantive possession charge in violation of 21 U.S.C. § 841.  [Doc. 21 at 1-4; Doc. 127-1 at 2-3.]  But since "it is possible to have two different conspiracies to commit exactly the same kind of crime," *see Nino*, 967 F.2d at 1512, satisfying this factor is not sufficient to establish a prima facie case.  *See also United States v. Votrobek*, 847 F.3d 1335, 1341 (11th Cir. 2017) ("[W]e have described this factor as 'clearly' the least important to the *Marable* analysis.") (citation omitted).

The fourth *Marable* factor—the overt acts charged and the nature and scope of the activity the government sought to punish in each case—counsels against Munoz's position.  As noted, Munoz bears the burden to make a prima facie showing that the prosecutions cover the same conspiracy; however, he has failed to make even a preliminary showing that the conspiracies overlapped in nature and

scope.  Neither the Texas indictment nor the superseding indictment here alleges specific overt acts or sets out the manner and means that accomplished the subject conspiracies outside of the type and quantity of drugs involved.[9]  Further, because Munoz pleaded guilty in the Texas case, there is no trial transcript for the Court to review that would provide information relevant to this factor.  Nor has Munoz presented any other information from the Texas case, such as a transcript of his plea or his presentence investigation report, that might contain information about that conspiracy.

The scant information that has been put into the record concerning the details of the Texas marijuana conspiracy has been presented by the government, not Munoz.  Specifically, the government's Notice to Introduce Evidence represents that the conspiracy charged in the Texas case and in this case are similar in that they both involved Munoz transporting drugs in a rented SUV and/or in the cab of tractor trailer [*see* Doc. 112 at 3-4 (detailing the two incidents in Texas where Munoz was arrested for transporting marijuana, which formed the basis for the

---

[9] The government is not required to prove an overt act under 21 U.S.C. § 846 to obtain a conviction.  *See United States v. Shabani*, 513 U.S. 10, 11 (1994); *Votrobek*, 847 F.3d at 1341 n.6.

charges there)]; however, the drugs, quantities, and dates of the overt acts at issue (that is, transporting drugs) in each case are different [*see id.*; *see also* Doc. 114 at 2].[10]   Meanwhile, Munoz has not proffered any information to suggest that any overt act that he performed in furtherance to the marijuana conspiracy charged in Texas was also an overt act in furtherance of the conspiracy charged in this case. Thus, the only detail before the Court indicates that in November 2015, he allegedly made a delivery of contraband to a location in Georgia, [*see* Doc. 114 at 2], a wholly different incident that his transporting marijuana nearly two years later [*see* Doc. 112 at 3-4].   Most glaring is his complete omission of any detail that would support a finding that the two conspiracies were connected, much less the same.   Without even a preliminary showing that there was overlap between the two charged conspiracies, this factor counsels strongly against Munoz.[11]

---

[10] The Court acknowledges that it would be improper for the government to charge multiple drug conspiracies if there was just an agreement to distribute multiple types of substances.   For example, in *Marable*, the court found that that two indictments charging defendant with conspiring to traffic different substances was actually "a single conspiracy described in two ways" rather than two separate offenses where there was a common overt act between the two charged conspiracies.   578 F.2d at 155.   In contrast, here there is no indication that there is any overt act common to both conspiracies.

[11] The government asserts that "the facts underlying the Texas conviction have nothing to do with the Atlanta charges" and, in support, attaches copies of

Finally, Munoz has not met his prima facie burden to show the fifth *Marable* factor—place. The Texas indictment alleged that Plaintiff committed the charged offenses entirely within in the Corpus Christi Division of the Southern District of Texas. [Doc. 127-1 at 2.] The operative indictment in this case charges that the conspiracy and the substantive drug charge occurred in the Northern District of Georgia and "elsewhere." [Doc. 21 at 1, 3.] While "elsewhere" is certainly an expansive term, Munoz presents no evidence or information that the charged in this

_____

applications for two search warrants that the DEA obtained in November 2015 to search an office/warehouse in Buford, Georgia and storage units in Fort Wayne, Indiana. [Docs. 127-2 & 127-3.] The Court fails to see how those warrant applications, which describe events that occurred nearly 15 months **before** the beginning date of the Texas marijuana conspiracy, necessarily show that the two conspiracies were different. (*Compare* Doc. 127-1 (alleging conspiracy beginning on or about February 3, 2017), *with* Doc. 127-2 at 3-7 (describing events that occurred in October and November 2015) and Doc. 127-3 at 3-10 (describing events that occurred in November 2015).) Those warrants reveal nothing about events that happened after November 2015; thus, they shed no light on the conspiracy charged in the Texas case or conduct that any co-conspirators took in furtherance of the conspiracy charged in this case. The government's defective argument is of no moment, however, because at this point, the government does not bear the burden to show that there were, in fact, two conspiracies (since Munoz has not met his burden to make a prima facie showing of a double jeopardy violation). Nevertheless, if the government were put to that burden, those warrants would be inadequate on their own to show that the prosecutions cover different conspiracies.

24

case includes actions that he or any other alleged co-conspirator took in the Corpus Christi Division of the Southern District of Texas.

In sum, considering the *Marable* factors, the Court concludes that Munoz has not carried his burden of making a prima facie showing of double jeopardy. Even though the Texas conspiracy began and ended within the time period for the conspiracy charged in this case, and Munoz has been charged with the same statutory offenses here; it is more significant that he has not identified any conspirators common between the two alleged conspiracies, not made a preliminarily showing that there is geographic overlap between the two conspiracies or that the conspiracies involved similar overt acts or activities sought to be punished. Without that prima facie showing of a nonfrivolous basis for a double jeopardy claim, no evidentiary hearing is warranted and Munoz's alternative request to dismiss the charges on double jeopardy grounds should be denied.[12]

For all these reasons, Munoz's motion to dismiss should be **DENIED**.

---

[12] This denial—both of the request for dismissal and the request for an evidentiary hearing—should be without prejudice, since it is based in large part on the lack of information or evidence provided by Munoz.

### III.   MOTIONS TO SUPPRESS

On November 6, 2019, Munoz filed a "Preliminary Motion to Suppress Wiretap Evidence" [Doc. 117], which he amended on December 6, 2019 [Doc. 124]. In his amended and now operative motion, Munoz states that he is not listed as a target on any wiretap application and there is no indication that he was a party to any intercepted communication. [Doc. 124 at 2.] He therefore concedes that he lacks standing to challenge the interceptions in this case. [*Id.*] As a result, it is recommended that Munoz's motion be **DENIED** to the extent that he seeks to suppress intercepted communications. *See United States v. Pacheco-Romero*, No. 1:19-CR-077-LMM-RGV, 2019 WL 4179550, at *2 (N.D. Ga. Aug. 7, 2019) (recommending denial of motions to suppress wiretap and geo-location evidence where defendants did not satisfied their preliminary burden to establish standing), *recommendation adopted*, 2019 WL 4169887 (N.D. Ga. Sept. 3, 2019).

Even so, Munoz separately argues that the government should be compelled to produce additional information relating to numerous wiretaps that were authorized by judges on the Superior Court of DeKalb County, Georgia, between September 2015 and June 2017. [Doc. 124 at 2-3.] More specifically, Munoz states that in discovery, the government produced an application for a wiretap order authorizing the interception of a cellular telephone identified as "TT17," as well as

26

linesheets associated with the communications intercepted over TT17.  [*Id.*; *see also* Doc. 124-1 (affidavit accompanying wiretap application).]  The affidavit that the government produced with the application refers to sixteen other telephone numbers, "TT1" through "TT16," but the government has not produced any other affidavits, applications, or linesheets corresponding to those telephone numbers. [Doc. 124 at 3.]  He requests that information, as well as the intercepted calls' "predecessor application data," relating to 35 motions filed in DeKalb County seeking wiretaps or renewals of wiretaps on at least 56 different phones.  [*See* Doc. 124-2.[13]]  Munoz contends that he needs of all this additional information to "challenge any wiretap for which he was either targeted or was a party."  [*Id.* at 3-4.]  He finally contends that the information may be relevant to his double jeopardy defense.  [*Id.*]

The government responds that it does not intend to use any intercepted communications other than what it has produced, and, therefore, there is no potential wiretap evidence that could be suppressed.  [Doc. 129 at 2.]

---

[13] Munoz attached an exhibit listing 35 motions filed in DeKalb County seeking wiretaps or renewals of wiretaps on at least 56 different phones.  [*See* Doc. 124-2.]  Munoz appears to request the production of each of those applications as well, plus "all predecessor application data."  [Doc. 124 at 3.]

On reply, Munoz reiterates that "predecessor line sheets" are relevant because he might have been targeted or intercepted in an earlier communication; and since the conspiracy he is charged with spanned several years, the line sheets "are needed . . . as possible evidence in support of his claim that there was just one conspiracy." [Doc. 135 at 1-4.] He also contends that the information is discoverable under Federal Rule of Criminal Procedure 16, as well as Federal Rule of Evidence 106 (which codifies the rule of completeness). [*Id.* at 4-5.]

The Court cannot agree with Munoz that he is entitled to the additional information from any and all so-called predecessor wiretaps. Starting with the Federal Rules of Procedure, Rule 16 provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:  (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."  Fed. R. Crim. P. 16(a)(1)(E).  It appears that Plaintiff contends that the additional information at

28

issue falls within the first category—that is, items material to preparation for the

defense.[14]  Significant to Munoz's argument, the Eleventh Circuit has explained:

> An item in the first category need not be disclosed unless the
> defendant demonstrates that it is material to the preparation of his
> defense.  A general description of the item will not suffice; neither
> will a conclusory argument that the requested item is material to the
> defense.  Rather, the defendant must make a specific request for the
> item together with an explanation of how it will be "helpful to the
> defense."

*Jordan*, 316 F.3d at 1250-51 (citations omitted).[15]  In other words, "the defendant

must show more than that the item bears some abstract logical relationship to the

issues in the case," but rather, "[t]here must be some indication that the pretrial

disclosure of the item would enable the defendant significantly to alter the quantum

of proof in his favor."  *Id*. (alterations adopted; citations omitted).

Here, Munoz's argument in support of his request for information relating to

other wiretaps is far too general to meet *Jordan*'s threshold for the Court to compel

---

[14] The other two categories are inapplicable.  Rule 16(a)(1)(E)(ii) is not
applicable because the government will not use the evidence obtained from other
telephones in its case-in-chief.  As for Rule 16(a)(1)(E)(iii), Munoz does not
contend that the information belongs to him, so that provision also does not apply.

[15] "Helpful" in this context means useful in preparing the defense, and not
necessarily exculpatory to the defendant.  *Jordan*, 316 F.3d at 1250 (citing *United
States v. Marshall*, 132 F.3d 63, 67-68 (D.C. Cir. 1998).

production under Rule 16.  Though he maintains that intercepted communications likely relate to the conspiracy charged in this case, he does not provide any concrete explanation of how it will be helpful to his defense—for instance, that he made calls to those telephone numbers during the periods of interception that relate the conduct charged in the present indictment.[16]  Likewise, his assertion that he needs the material to determine if he has standing to challenge any of those wiretaps is of no moment, as the government has stated that it does not intend to use any of those intercepted communications at trial—thus, there is no evidence that would require suppression.  Nor does he explain how the information would be material to his double jeopardy argument.  Accordingly, without a showing of materiality, the Court cannot find that Rule 16 obligates the government to produce information it obtained through wiretaps on other phones or information from the applications for those wiretaps.

As for Munoz's request for information under Federal Rule of Evidence ("FRE") 106, the Court fails to see how the rule of completeness mandates the

---

[16] To the contrary, Munoz only suggests that "*if* [he] is not mentioned," anywhere in the intercepted calls or related documentation," the fact of his absence might be exculpatory.  [Doc. 135 at 4 (emphasis added).]  This argument highlights the fundamentally speculative nature of his request.

production of evidence obtained through other wiretaps.  FRE 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."  The rule of completeness chiefly exists as an antidote to the threat that providing only a portion of a writing or statement to the jury out of context will create a misleading impression.  Here, Munoz has not pointed to any specific statement that he contends would be misunderstood unless viewed in the context of a larger conversation.[17]

---

[17] As noted, Munoz also voices his suspicion that none of the previously intercepted wiretaps even refer to his involvement in the alleged conspiracy, which he maintains would be exculpatory.  [Doc. 135 at 4.]  As it applies to his argument under FRE 106, it thus appears that Munoz wishes to place any evidence pertaining to the TT17 wiretap in the larger context of the TT1 through TT16 wiretaps, in which he hopes he was not involved.  FRE 106 (along with the rule of completeness), however, simply guarantees that a limited portion of a document or recorded statement may not be presented without the context of the remaining portions of the *same* document or statement.  It does not, however, guarantee that incriminatory evidence must be presented in the context of all other similar (or somehow related) evidence that might be exculpatory.  *See, e.g., United States v. Boylan*, 898 F.2d 230, 257 (1st Cir. 1990) ("We see no valid basis for a per se rule that all documents contained in agglomerated files must be admitted into evidence merely because they happen to be physically stored in the same folder.").  Regardless of the foregoing, though, presumably Munoz can elicit testimony from the case agent or others at trial confirming his suspicion as to his involvement with the other intercepted communications.

For these reasons, it is **RECOMMENDED** that Munoz's Motions to Suppress be **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, it is **ORDERED** that Munoz's Motion for Governmental Disclosure of All Cooperating Sources, Along with Any Deals, Promises, or Inducements Involving Each Cooperating Source and Potential Witness [Doc. 109] be **DENIED.**

It is further **RECOMMENDED** that Munoz's Motion to Dismiss For Speedy Trial Violation and Alternatively to Dismiss on Double Jeopardy Grounds [Doc. 114]; Munoz's Preliminary Motion to Suppress Wiretap Evidence [Doc. 117]; and Munoz's Amended Motion to Suppress Wiretap Evidence Requesting Production of Predecessor Applications and Line Sheets and Reserving the Right to Further Amend [Doc. 124] be **DENIED**.

I have now addressed all referred pretrial matters relating to this defendant and have not been advised of any impediments to the scheduling of a trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL.**[18]

---

[18] The Court has deferred Munoz's Notice of Intention to Introduce 404(b) Evidence and Motion in Limine for Admission of 404(b) [Doc. 112] and Motion to Sever Trial from Co-Defendants [Doc. 115] to the District Judge. At this point, all

IT IS SO ORDERED and RECOMMENDED this 11th day of February,

2020.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

defendants who have been arraigned in this case have been certified ready for trial.
[*See* Doc. 78 (Defendant Jose Edillio Siller (2)) and Doc. 118 (Defendants Daniel
Acuna (1) and Edgar Ramirez-Hernandez (6)).]  The two remaining defendants,
Defendants Petro Reyes-Aguirre (3) and Samuel Arevalo (4) have not been
arraigned.